UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Scott Malcolm and Tim McGough, as
Trustees of the Carpenters & Joiners
Welfare Fund, Twin City Carpenters
Pension Master Trust Fund,
Carpenters and Joiners Apprenticeship
and Journeymen Training Trust Fund,
and Twin City Carpenters Vacation
Fund; and each of their successors,

Mike Gavanda and Gary Larson, as
Trustees of the Painters and Allied
Trades District Council No. 82 Health
Care Fund; John Bosquez and Gary
Larson, as Trustees of the Minneapolis
Local 386 Drywall Finishing Industry
Pension Fund, Minneapolis Painting
Industry Pension Fund, Minneapolis
Painting Industry Vacation and Holiday
Fund; Michael Gavanda and James
Smallen, as Trustees of the Minnesota
Finishing Trades Training Fund; and
each of their successors,

Jeff Jewett and John Nakasone, as
Trustees of the St. Paul Painting Industry
Pension Fund, St. Paul Painting Industry
Vacation Fund; and each of their successors,

                                    Plaintiffs,

        vs.

NPD, Inc., and John Koralia, individually,

                                    Defendants.      Civ. No. 05-960 (JMR/RLE)

        *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

                              I.  Introduction

        This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Amend their Answer and

Counterclaim, as well as their Motion to Stay Litigation and Compel Arbitration.  A

Hearing on the Motions was conducted on December 1, 2005, at which time, the

Plaintiffs appeared by Amanda R. Cefalu, Esq., and the Defendants appeared by

Joseph J. Mihalek, Esq.[1]   For reasons which follow, we recommend that the

Defendants' Motions be denied.

_____

        [1]Many of the issues, which were raised at the Hearing, were not thoroughly briefed, and therefore, we directed the parties to supplement their arguments with additional briefing.  The Court has since received those supplemental filings, and has given those arguments full consideration in issuing this Report.

II.  <u>Factual and Procedural Background</u>

This matter concerns the propriety of an audit, and a Judgment for any unpaid fringe benefits discovered during the course of that audit, brought on behalf of a number of union health, welfare, vacation, and pension benefit funds ("the Funds"), against the Defendants NPD, Inc. ("NPD"), a corporation which is engaged in the drywall and painting business, and John Koralia ("Koralia"), who is the president of NPD.  The Plaintiffs serve as Trustees for the Funds.

NPD is a signatory to a Collective Bargaining Agreement ("CBA") between the Lakes and Plains Regional Council of Carpenters and Joiners, and the Carpentry Contractors Association and the Minnesota Drywall and Plaster Association (hereinafter "Carpenters' CBA").  <u>Affidavit of Amanda R. Cefalu ("Cefalu Aff.")</u>, <u>Docket No. 51</u>, Ex. A; see also, <u>Complaint</u>, at ¶10; <u>Answer</u>, at ¶10.  NPD is also a signatory to a CBA between the Minnesota Drywall and Plaster Association, and the Painters and Allied Trades District Council No. 82 of Minnesota, and the International Union of Painters and Allied Trades, AFL-CIO (hereinafter "Painters' CBA").  <u>Cefalu Aff.</u>, Ex. B;  <u>Complaint</u>, at ¶11; <u>Answer</u>, at ¶11.  Both parties agree that the Plaintiffs, and the Funds they represent, are not signatories to either of the aforementioned CBAs.

NPD admits that it is required to make fringe benefit contributions to the Funds, in accordance with the CBAs, on behalf of each employee covered by the CBAs. See, Answer, at ¶¶10-12. Furthermore, NPD admits that, as an employer, it is required to furnish the Plaintiffs with all necessary employment and payroll records, for auditing purposes, upon the demand of the Funds. See, Complaint, at ¶15; Answer, at ¶15.

In March of 2004, NPD furnished to the Plaintiffs' auditors all of its employee payroll records that were requested as part of the Plaintiffs' review of NPD's records and payments. See, Affidavit of John Koralia ("Koralia Aff."), Docket No. 55, at ¶¶2-3. NPD received no notice from Plaintiffs that further payments were owed. Id. at ¶¶6-7.

On May 19, 2005, the Plaintiffs filed suit, requesting the right to audit NPD's payroll, and employment records, for the period beginning in January of 2004, through the present, and seeking the entry of a monetary Judgment for any uncovered deficiencies. See Complaint, at pp. 7-8. On June 15, 2005, the Defendants filed an Answer, and additionally asserted Counterclaims, which are premised upon a breach of contract, and an abuse of process. See, Answer and Counterclaim, Docket No. 2, at pp. 6-8. At that time, the Defendants did not assert, nor mention, the prospect of arbitration to resolve the dispute.

On October 21, 2005, the Defendants filed a Motion to Amend their Answer so as to include a defense of arbitration, and they concurrently filed a Motion to Stay Litigation and Compel Arbitration.  See, <u>Memorandum of Law in Support of Motion to Amend Answer and Counterclaim</u>, <u>Docket No. 19</u>, at p. 6; <u>Motion to Stay Litigation and Compel Arbitration</u>, <u>Docket No. 24</u>.  The Defendants contend that, "[b]ecause the plaintiffs' discovery requests indicate that they brought the action to challenge NPD's use and classification of subcontractors, a disputed issue arising under the terms of the collective bargaining agreements signed by NPD, the dispute is subject to mandatory arbitration."  <u>Memorandum of Law in Support of Motion to Amend Answer and Counterclaim</u>, at p. 1. In response, the Plaintiffs argue that they are "merely seeking the production of records concerning hours worked by individuals under the control and direction of NPD, Inc. to determine compliance with the Collective Bargaining Agreements and Declarations of Trust."  See, <u>Supplemental Memorandum of Law in Opposition to Defendants' Motion to Stay Litigation and Compel Arbitration</u>, <u>Docket No. 63</u>, at p. 5.

III.  Discussion

A.    The Defendants' Motion to Stay Litigation and Compel Arbitration.

1.    Standard of Review.   When reviewing a Motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) if the specific dispute is within the scope of that agreement.  See MedCam, Inc. v. MCNC, 414 F.3d 972, 974-75 (8th Cir. 2005), citing Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A., 334 F.3d 721, 726 (8th Cir. 2003), cert. denied 540 U.S. 1149 (2004), citing in turn, Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994).

However, when the parties include a defendant, which is an employer and a signatory to a CBA, and the defendant attempts to invoke the arbitration provisions of the CBA against a plaintiff, which is a  non-signatory to the CBA, and which is a trustee for a fringe benefit fund, our analysis is closely guided by Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984).  There, the United States Supreme Court held that the trustees of two (2) multi-employer trust funds could seek judicial enforcement of the trust agreements without first submitting to the arbitration clauses which bound the signatory parties.  Id. at 366.  The Court found that the traditional presumption, which favors arbitration in employer/labor disputes, was inapplicable in

- 6 -

the context of a dispute arising between trustees of fringe benefit plans, and an employer which is obligated to contribute to those plans, holding in part as follows:

> We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, **even if those disputes raise questions of interpretation under the collective-bargaining agreements**.

Id. at 372. (emphasis added)

The Court also found that, in the absence of express contractual language in the CBA, or the apparent intent of the signatories to require arbitration in regards to the trustees' claims which relate to the contributions, a non-signatory trustee plaintiff is not obligated to submit to arbitration before seeking judicial enforcement of the employer's obligations to the trusts.  Id. at 373-76.

Our Court of Appeals has addressed the apparent demarcation, between the status of trustees and other parties in regards to CBAs, as follows:

> We cannot agree that Schneider divides the world of labor plaintiffs into "trustees and "nontrustees" with the presumption of arbitrability applying to all but the former; the issue instead is whether the [parties] here are more

> similarly situated with the trustees in <u>Schneider</u> or with
> active employees and their unions as to whom arbitration
> generally has been required.

<u>Anderson v. Alpha Portland Industries, Inc</u>., 752 F.2d 1293, 1296 (8th Cir. 1985), cert. denied, 471 U.S. 1102 (1985).

As a consequence, in the absence of an express provision in the applicable CBAs, the analysis as to whether a non-signatory trustee plaintiff is required to submit a claim to arbitration necessarily depends on an examination of the pertinent trust and CBA documents, so as to determine whether the signatories to the agreement evinced such an intent. See, <u>Pipe Fitters Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.</u>, 856 F.2d 837, 840 (7th Cir. 1988), citing <u>Schneider Moving & Storage Co. v. Robbins</u>, supra at 371-72; see also, <u>Anderson v. Alpha Portland Industries, Inc</u>., supra at 1300 (finding that the relevant documents did not require arbitration either by express language, or by way of intent or presumption).

In <u>Schneider</u>, the Supreme Court noted that the trust agreements, which were implicated by reference in the CBAs, explicitly recognized that "The Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions * * * which may be owed to the Trust Fund." <u>Schneider Moving & Storage Co. v.</u>

Robbins, supra at 369-70.  The Court further noted that the CBA at issue did not give any non-signatories to the agreement access to the arbitration process.  Id. at 370. Accordingly, in the absence of express language, or a clear intent, the arbitration provisions of the applicable agreements will not be binding upon a non-signatory trust fund.  Id. at 376; Pipe Fitters Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc., supra at 840-43; see also, Stier v. Satnick Development Corp., 974 F. Supp. 436, 440 (D.N.J. 1997).

2.    Legal Analysis.

a.    The Trust Documents.  We begin our analysis by examining the applicable trust documents, and note that the Second Amended and Restated Agreement and Declaration of Trust of the Twin City Carpenters Pension Master Trust Fund (hereinafter, "Carpenters' Trust Agreement") expressly provides, in regards to the collection and enforcement of payments, that:

> The Trustees * * * shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement.  They shall take steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the [Carpenters'] Trust Fund for the purpose of collecting such

- 9 -

> payments, money and property, without prejudice,
> however, to the rights of the Union to take whatever steps
> it deems necessary and wishes to undertake for such
> purpose.

Carpenters' Trust Agreement, <u>Cefalu Aff.</u>, Ex. C, §4.5, at p. 16.

The terms of the Carpenters' Trust Agreement have been incorporated into the

Carpenters' CBA.  See, Carpenters' CBA, <u>Cefalu Aff.</u>, Ex. A, Art. 15, at p. 10.

Similarly, the Restated Agreement and Declaration of Trust of St. Paul Painting

Industry Pension Fund (hereinafter, the "Painter's Pension Agreement" ), provides,

in part, that the trustees are empowered to:

> Maintain any and all actions or legal proceedings which may
> be deemed necessary for the protection of the Trust, the
> Fund, or the Board of Trustees, or to secure the payment
> of Employer and Employee Contributions to the Trust, or
> to effectuate the administration of the Trust or the Pension
> Plan, or to secure the pension, retirement or other benefits
> contemplated hereby.

Painters' Pension Agreement, <u>Cefalu Aff.</u>, Ex. E, §9(g), at p. 15.

In addition, the Restated Agreement and Declaration of Trust of the Painters and Allied

Trades District Council 82 Health Care Fund empowers the trustees to "maintain any

and all actions or legal proceedings which may be deemed necessary for the protection

for the Trust, the Fund, or the Board of Trustees, or to secure the payment of

Employer and Employee Contributions to the Trust, or to effectuate the administration

- 10 -

of the Trust." <u>Cefalu Aff.</u>, Ex. F, §6.07(g), at p. 15.  The Painters' CBA states that the Funds "will be administered pursuant to an Agreement of Declaration of Trust," and therefore, incorporate those provisions from the applicable trust agreements.  See, Painters' CBA, <u>Cefalu Aff.</u>, Ex. B, Appendix A, at pp. 20-21.

In sum, the trust agreements in this Record vest the Plaintiffs with the ability to initiate legal proceedings to compel audits of NPD, and to collect outstanding payments that are owed to the Funds.  The Defendants have not identified, nor have we discovered, any provision in the trust documents which would give rise to an obligation, or evince an intent, to require exhaustion of arbitration proceedings, on the part of the Plaintiffs, prior to invoking legal proceedings to secure an audit or any uncovered deficiencies in contributions.  In construing similar language, which was contained in several trust documents, the Court of Appeals for the Seventh Circuit, undertaking the analysis dictated by <u>Schneider</u>, found that "the agreements plainly suggest that the parties intended for the trustees of the Trust Funds to have broad powers when seeking to enforce employer obligations."  <u>Pipe Fitters Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.</u>, supra at 840-41.  Accordingly, there as here, the provisions do not support a finding that the parties intended that legal proceedings would be precluded, and that arbitration would be

favored, in resolving disputes over the trustees' enforcement of employer obligations.

Id.  Therefore, any requirement to arbitrate cannot be grounded in the applicable trust

agreements.

The Defendants contend that the trust agreements  recognize that the CBAs

control in determining the amount and manner in which the employers contribute to the

funds.  See, Defendants' Supplemental Memorandum of Law in Support of Motion

to Stay Litigation and Compel Arbitration, Docket No. 59, at 3.   However, that

recognition is not inconsistent with allowing the Plaintiffs the ability to initiate legal

action to enforce the employer's obligations.  Accordingly, we find no evidence of

intent, from the trust documents, that would bind the Plaintiffs to arbitration.

b.     The Collective Bargaining Agreements.   The Defendants

argue that several provisions in the applicable CBAs contain language which indicates

that the signatories intended the Plaintiffs to submit this type of dispute to  arbitration.

The Carpenters' CBA contains the following provisions:

**ARTICLE 7 - GRIEVANCES, DISPUTES & ARBITRATION**

A.     There shall be established a Joint Trade Board, which
shall have charge of the enforcement and interpretation of
the working agreement, as well as duties specifically
mentioned herein.  They shall meet no less than thirty (30)
days after any written notice of a grievance to settle a

dispute. Each grievance shall be deemed to be waived unless submitted in writing to the parties for resolution within ten (10) days after the event giving rise to the grievance occurs.

\*   \*   \*

D.    If the Joint Trade Board is unable to arrive at a mutually agreeable solution to a problem brought before it, a neutral arbitrator who shall be selected by the Joint Trade Board shall hear the case and issue a decision, which shall be final and binding on all parties involved. In the event the Joint Trade Board is unable to agree on a neutral arbitrator within ten (10) days, the arbitrator shall be selected by and under the rules of the Federal Mediation Service. The decision of the arbitrator shall be final and binding on signatories to the Agreement who are parties to the dispute; provided, however that the arbitrator shall have no power to add, delete, or modify any provisions of this Agreement. Each party shall pay the fees and costs of its own representatives and witnesses. The costs and fees of the neutral arbitrator shall be equally divided between the parties. This article shall not be applicable to jurisdictional disputes nor to the non-payment of wages or fringes, except that this article shall apply to wage disputes.

Carpenters' CBA, Cefalu Aff., Ex. A, Art. 7, at pp. 4-5.

Similarly, the Painters' CBA contains the following provisions:

## Article XX
## Joint Trade Boards

Section 1. The parties hereto agree that during the term of this Agreement there shall be a local Joint Trade Board composed of three (3) representatives designated by the

- 13 -

Association and three (3) representatives designated by the Union.

         *      *      *

Section 2.   (a) All disputes and matters of controversy arising under the provisions of this Agreement shall be referred to the Local Joint Trade Board.  All claims made by individual Employees in regard to wages and subsistence must be filed with the Union within thirty (30) days of the violation or knowledge of violation.  This does not include claims made by the Union or audits conducted.

(b) Any party to this Agreement may request a hearing of the matter in dispute by the Local Joint Trade Board and such Board shall thereupon proceed to hearing and decisions on such matter.

         *      *      *

Section 3.  (a)  The Local Joint Trade Board is empowered to hear and decide all grievances and disputes which arise between the parties as to the interpretation or application of this Agreement; to award or assess remedies, damages and penalties for violations of this Agreement; to issue interpretive rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intent of this Agreement; to investigate all grievances and disputes submitted to it, including the conduct of audits of Employer records, to recommend amendments to or changes in this Agreement, but only upon request of both parties.

Painters' CBA, <u>Cefalu Aff.</u>, Ex. B, Art. XX, at p. 10.

Our reading of these provisions fails to support the Defendants' contention that the Plaintiffs are required to resolve any disputes with NPD by arbitration. Instead, it would appear that the cited provisions only reinforce the premise that the arbitration process is to be invoked solely by the signatory parties to the agreement. Specifically, the Carpenters' CBA requires that "[t]he decision of the arbitrator shall be final and binding on **signatories to the Agreement** who are **parties** to the dispute." Cefalu Aff., Ex. A, Art. 7, at p. 5 (emphasis added).

Furthermore, the subject of the current dispute -- namely, the propriety of an audit, and any Judgment that should flow out of any deficiency -- is expressly excluded from the arbitration provisions. Id. ("This article [the Joint Trade Board provision] shall not be applicable to jurisdictional disputes nor to the non-payment of wages or fringes, except that this article shall apply to wage disputes"). While the Defendants contend that the dispute before us is actually over wage disputes, and the ability of NPD to utilize subcontractors, the Complaint makes no mention of subcontractors or wages, but instead, solely seeks an audit to determine any non-payment of fringe benefit contributions. See, Complaint, at p.8. Given that the subject matter of the Complaint is solely the audit and non-payment of fringes, we conclude

that the Carpenters' CBA provision expressly exempts the dispute from arbitration, and furthermore, does not evince any intent to bind the Plaintiffs to arbitration.

An examination of the Painters' CBA yields a similar result.  In particular, the Painters' CBA states that "Any party to this Agreement may request a hearing of the matter in dispute by the Local Joint Trade Board."  Cefalu Aff., Ex. B, Art. XX, at p. 10.  Given the requirement that access to arbitration stems from being a party to the agreement, we cannot discern any contractual mechanism by which the Plaintiffs were entitled to resolve this dispute by arbitration.  Furthermore, Article XX, Section 3, of the Painters' CBA provides that the Joint Trade Board is empowered "to investigate all grievances and disputes submitted to it, including the conduct of audits of Employer records, to recommend amendments to or changes in this Agreement, but only upon request of **both parties**."  Id. [emphasis added].  Here, it is clear that the reference to both parties refers back to the parties to the agreement referenced in Article XX, Section 2 of the Painters' CBA.  Given the sum of these provisions, we are unable to detect any intent, in the Painters' CBA, which would require the Plaintiffs to exhaust the arbitration process prior to bringing this action.

The Defendants cite various other portions of the two (2) applicable CBAs for the proposition that the signatories intended to bind the Plaintiffs to arbitration, but

those arguments are unavailing.  For example, the Defendants contend that the

language, which specifies that "a neutral arbitrator who shall be selected by the Joint

Trade Board  shall hear the case and issue a decision, which shall be final and binding

on all parties involved," would encompass the Plaintiffs as a "party involved," and

therefore, anticipates the Plaintiffs' involvement in arbitration.  However, when read

in context, that same provision later references "signatories to the Agreement who are

parties to the dispute."  <u>Cefalu Aff.</u>, Ex. A, Art. 7, at p. 5.  We recognize that the

Carpenters' CBA is not a contract between a union and a lone employer, but instead,

encompasses a number of different employers, and therefore, the phrase "all parties

involved" is included to merely recognize that a grievance would likely not encompass

all of the signatory parties, and that arbitration is available without requiring the

presence or consent of all of the signatories to the agreement.

The Defendants also contend that the Carpenters' CBA requires that any

dispute, that involves the payment of fringe benefits, be submitted to arbitration, by

citing the following provision:

> The Employer may demand that the question of failure to
> pay the amount due the Trusts be submitted to arbitration,
> according to the contract.  Providing such request is
> submitted to the Union in writing within seventy-two (72)
> hours after receipt of the above notice, and provided further

that the Employer deposit in escrow, the amount of the
claimed delinquent payments with the Administrator of the
Fund.

Upon the filing of the request for arbitration and the
depositing of the amount in dispute, the Union will not
engage in any economic activities pending the resolution of
such dispute.

<u>Cefalu Aff</u>., Ex. A, Art. 15(D), at p. 10.

However, that provision only references the actions that can be conducted by either

an Employer or a Union, and does not make any reference to the Plaintiffs' obligation,

on behalf of the Funds, to submit to arbitration.  Furthermore, the phrase "according

to the contract" would appear to, once again, be binding only upon the signatories to

the agreement, or alternatively, to reference the arbitration procedures, which were

previously established in Article Seven (7) of the Carpenters' CBA, where the

"decision of the arbitrator shall be final and binding on signatories to the Agreement

who are parties to the dispute."  Carpenters' CBA, <u>Cefalu Aff</u>., Ex. A, Art. 7(D), at

p. 5.

Finally, the Defendants argue that the Plaintiffs brought this lawsuit to challenge

the classification of persons as "employees," or "subcontractors," and therefore, such

a dispute is subject to arbitration, pursuant to the relevant provisions.   See,

<u>Defendants' Supplemental Memorandum of Law in Support of Motion to Stay</u>

Litigation and Compel Arbitration, at p. 16-17; see also, Carpenters' CBA, Cefalu Aff., Ex. A, Art. 11, at p. 6; Painters' CBA, Cefalu Aff., Ex. B, Art. XIV, at p. 6. However, at this time, those provisions are irrelevant, as the Plaintiffs have not accused the Defendants of having violated the subcontracting provisions of the labor contracts, but rather, have simply requested an audit.

While the Defendants have countered that the audit would necessarily require an interpretation of the term "employee," pursuant to the CBAs, we find that such a requirement does not require arbitration for the resolution of the dispute.   See, Schneider Moving & Storage Co. v. Robbins, supra at 372 ("We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, **even if those disputes raise questions of interpretation under the collective-bargaining agreements**.")[emphasis added].

Accordingly, we find that the CBAs do not evidence any intent to have the Plaintiffs submit to arbitration, and therefore, we recommend that the Plaintiffs' Motion to Stay Litigation and Compel Arbitration be denied.  Id. at 372-76 (finding no evidence of intent that trustees are obligated to submit to arbitration in the trust agreements or in the applicable CBAs); Pipe Fitters Welfare Fund, Local Union 597

- 19 -

v. Mosbeck Industrial Equipment, Inc., supra at 842 (finding no intention, based on the plain language of the agreements, to permit or require the trustees to utilize the envisioned arbitration procedure).

        c.     Waiver.[2]  The Plaintiffs also contend that the Defendants have waived their right to arbitration by failing to demand arbitration and,  instead, by threatening litigation in a judicial forum.  As applicable here, a party waives its right to demand arbitration when: 1) it has knowledge of an existing right to arbitration; 2) it undertakes conduct inconsistent with that right; and 3) the party opposing arbitration suffers prejudice.  See, Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003), citing Ritzel Comm. Inc. v. Mid-American Cellular Telephone Co., 989 F.2d 966, 969 (8th Cir. 1993), and Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998); see also, Hunt v. Up North Plastics, Inc., 980 F. Supp. 1046, 1048 (D. Minn. 1997).

---

[2]We address the issue of waiver only in the interests of completeness for, if the District Court adopts our recommended disposition of the Motion to compel arbitration, the Court need not reach the issue of waiver, as the Defendants cannot waive that which they are not entitled to invoke.  We also note that the issue of waiver was not brought up by either party in their prehearing briefs, or at the Hearing, but that the Court brought the issue to the attention of both parties.  Both parties have addressed the issue in their supplemental filings, and therefore, we deem it prudent to include the issue in our analysis.

Conduct which is inconsistent with a party's claimed right to arbitrate includes substantial invocation of the litigation process.   See, Ritzel Comm. Inc. v. Mid-American Cellular Telephone Co., supra at 969. Prejudice, which is sufficient to support a finding of waiver, may result from lost evidence, duplication of efforts, use of discovery methods that are unavailable in arbitration, or litigation of substantial issues going to the merits.  Stifel, Nicolaus & Co., Inc. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991).  While delay in seeking to compel arbitration does not, in and of itself, constitute prejudice, a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of an intent to arbitrate.  Id.  However, waiver of arbitration is disfavored in law, and the party seeking to prove waiver carries a heavy burden to dislodge the presumption against waiver.  See, Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 238 (5th Cir. 1998); Schwan's Sales Enterprises, Inc. v. Sabatasso, 1988 WL 119171 at *3 (D. Minn., November 8, 1988).

Here, the Plaintiffs argue that the Defendants conducted themselves in a manner that was inconsistent with a known right to arbitration by their filing of an Answer, which did not assert any right to arbitration, and by filing Counterclaims that asserted breach of contract, and abuse of process claims.  Furthermore, the Plaintiffs contend

that they have been prejudiced by having served, and responded to discovery. However, if the right to arbitrate were present, we would find that, given the totality the circumstances, the Defendants have not demonstrated that they have substantially waived that right by invoking the ligation process. The Defendants did not bring any Motions before this Court, prior to their assertion of the right to arbitrate, and they have not moved to dismiss, or litigate the merits of the case. Furthermore, the Plaintiffs, other than a nonspecific claim of "prejudice," have not demonstrated any onerous discovery burdens, that they would not have had to undertake if this matter were before arbitration. Indeed, it appears that the Plaintiffs have had the advantage of more extensive Federal Court discovery than might be expected in an arbitration proceeding. Furthermore, the Defendants did not encourage delay, given that the Motion was filed only three (3) months after they had answered the Plaintiffs' Complaint. Accordingly, the Defendants have not waived their right to seek an arbitration of their dispute with the Plaintiffs, if such a right had been established in the first instance.

      B.    <u>The Defendants' Motion to Amend Answer and Counterclaim.</u>

      Rule 15(a), Federal Rules of Civil Procedure, provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of
> court or by written consent of the adverse party; and leave
> shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a
> plaintiff may be a proper subject of relief, he ought to be
> afforded an opportunity to test his claim on the merits.  In
> the absence of any apparent or declared reasons -- such as
> undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave should, as the rules
> require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d
66, 67 (8th Cir. 1989).

Thus, while leave should be freely given, leave should not be given where the

proposed amendments are futile.  See, DeRoche v. All American Bottling Corp., 38

F. Supp.2d 1102, 1106 (D. Minn. 1998) ("Although we begin with a presumption of

liberality, an amendment to a pleading can be successfully challenged on grounds of

futility if the claims created by the amendment would not withstand a Motion to

Dismiss for failure to state a claim upon which relief can be granted."), citing

Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th  Cir.

1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th  Cir. 1989); see also, United States

ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001)("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim."), cert. denied 536 U.S. 925 (2002). "'Accordingly, futility must be assessed in the same manner as a 12(b)(6) motion.'" Berczyk v. Emerson Tool Co., 291 F. Supp.2d 1004, 1018-19 (D. Minn. 2003), quoting Lumsden v. Ramsey County Community Corrections Dep't, 2002 WL 31886630 at *1 (D. Minn., December 23, 2002).

As we have already fully addressed, the Plaintiffs are under no obligation to submit to the arbitration provisions, which are contained in the applicable CBAs. Accordingly, given that an amendment to the Defendants' Answer, which would assert a defense of arbitration that is based upon those provisions, would be futile, we recommend that the Defendants' Motion to Amend their Answer and Counterclaim also be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendants' Motion to Amend their Answer and Counterclaim [Docket No. 17] be denied.

2.     That the Defendants' Motion to Stay Litigation and Compel Arbitration [Docket No. 24] be denied.

Dated:  March 3, 2006          s/Raymond L. Erickson
-
                               Raymond L. Erickson
                               CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 20, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 20, 2006,** unless all interested

- 25 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.