UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Scott Malcolm and Tim McGough, as
Trustees of the Carpenters & Joiners
Welfare Fund, Twin City Carpenters
Pension Master Trust Fund,
Carpenters and Joiners Apprenticeship
and Journeymen Training Trust Fund,
and Twin City Carpenters Vacation
Fund; and each of their successors,

Mike Gavanda and Gary Larson, as
Trustees of the Painters and Allied
Trades District Council No. 82 Health
Care Fund; John Bosquez and Gary
Larson, as Trustees of the Minneapolis
Local 386 Drywall Finishing Industry
Pension Fund, Minneapolis Painting
Industry Pension Fund, Minneapolis
Painting Industry Vacation and Holiday
Fund; Michael Gavanda and James
Smallen, as Trustees of the Minnesota
Finishing Trades Training Fund; and
each of their successors,

Jeff Jewett and John Nakasone, as
Trustees of the St. Paul Painting

Industry Pension Fund, St. Paul
Painting Industry Vacation Fund;
and each of their successors,

                                  Plaintiffs,

    vs.

NPD, Inc., and John Koralia,
individually,

                           Defendants.      Civ. No. 05-960 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiffs' Motion for Summary Judgment on the Defendants' Counterclaims. A Hearing on the Motions was conducted on March 29, 2007, at which time, the Plaintiffs appeared by Amanda R. Cefalu, Esq., and the

Defendants appeared by Joseph J. Mihalek, Esq.[1]  For reasons which follow, we recommend that the Plaintiffs' Motion be granted.

## II.  Factual and Procedural Background

This matter concerns the propriety of an audit, and a Judgment for any unpaid fringe benefits discovered during the course of that audit, that is being sought by a number of union health, welfare, vacation, and pension benefit funds ("the Funds"), against the Defendants NPD, Inc. ("NPD"), a corporation which is engaged in the drywall and painting business, and John Koralia ("Koralia"), who is the president of NPD.  The Plaintiffs serve as the Trustees of the Funds.

NPD is a signatory to a Collective Bargaining Agreement ("CBA") between the Lakes and Plains Regional Council of Carpenters and Joiners, and the Carpentry Contractors Association, and the Minnesota Drywall and Plaster Association (hereinafter the "Carpenters' CBA").  See, Affidavit of Amanda R. Cefalu ("Cefalu Aff."), Docket No. 51, Ex. A; see also, Complaint, at ¶10; Answer, at ¶10.  NPD is also a signatory to a CBA between the Minnesota Drywall and Plaster Association, and

---

[1]Many of the issues, which were raised at the Hearing, were not well briefed, and therefore, we directed the parties to supplement their arguments with additional briefing.  The Court has since received those supplemental filings, and has given those arguments full consideration before issuing this Report.

the Painters and Allied Trades District Council No. 82 of Minnesota, and the International Union of Painters and Allied Trades, AFL-CIO (hereinafter the "Painters' CBA"). See, Cefalu Aff., Ex. B; Complaint, at ¶11; Answer, at ¶11. Both parties agree that the Plaintiffs, and the Funds they represent, are not signatories to either of the aforementioned CBAs.

On May 19, 2005, the Plaintiffs filed suit, pursuant to the Employee Retirement Income Security Act, see, Title 29 U.S.C. §1001 et seq. ("ERISA"), which seeks an audit of NPD's payroll, and employment records, for the period beginning in January of 2004, through the present, as well as the entry of a monetary Judgment for any uncovered deficiencies. See Complaint, at pp. 7-8.

On June 15, 2005, the Defendants filed an Answer, in which they asserted Counterclaims, which are premised upon State law, for a breach of contract, and an abuse of process. See, Answer and Counterclaim, Docket No. 2, at pp. 6-8. The Defendants contend that the Plaintiffs, who are third party beneficiaries to the CBAs, allegedly breached the CBAs by "a) instituting legal and equitable action against NPD without first requesting of NPD the documents which it now seeks to obtain; b) by seeking a second audit for a calendar year which has already been audited; c) by

- 4 -

seeking an audit mid-year rather than waiting until year end; and d) otherwise failing to act in good faith and in compliance with the parties' contracts and their prior course of dealing." Id. at p. 7, ¶10.  The Defendants contend that those acts violate, either expressly, or impliedly, the terms of the contract, or the parties' prior course of dealing. Id. at ¶8. Further, the Defendants allege that, by commencing this action, the Plaintiffs are impermissibly bringing this action for the ulterior purpose of challenging NPD's usage of subcontractors.  Id. at ¶¶15-16; see, Defendants' Memorandum of Law in Opposition to Summary Judgment, Docket No. 113, at pp. 5-6.

The Plaintiffs now move for Summary Judgment on the Defendants' Counterclaims, and contend that: 1) any State law common law claims are preempted by ERISA, pursuant to Title 29 U.S.C. §1144(a); 2) the Defendants lack standing to bring the State law claims; and 3) the Defendants' claims fail as a matter of substantive law.  See, Plaintiffs' Memorandum in Support of Summary Judgment, Docket No. 111, at pp. 5-7; Plaintiffs' Supplemental Memorandum of Law, Docket No. 117, at pp. 2-5.  In response, the Defendants concede that State law claims, which relate to an ERISA plan, are generally preempted, but that "courts have recognized that there are circumstances under which the court must permit common law causes of action to protect employers who would otherwise be without a remedy and 'left to the mercy

of plan trustees.'" <u>Defendants' Supplemental Memorandum of Law</u>, <u>Docket No. 118</u>,

at pp. 1-3(citations omitted).

### III.  <u>Discussion</u>

A.      <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of

resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and

in rendering credibility determinations.  See, <u>Wallace v. DTG Operations, Inc.</u>, 442

F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327

(1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th

Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment

is appropriate when we have viewed the facts, and the inferences drawn from those

facts, in a light most favorable to the nonmoving party, and we have found no triable

issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing

<u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox</u>

<u>Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>,

328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material"

if it must inevitably be resolved and the resolution will determine the outcome of the

case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could

return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center, Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case

because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

        B.     Legal Analysis.  ERISA contains a broad preemption provision, which provides as follows:

> Except as provided in subsection (b) of this section [which deals with insurance statute's, and which, therefore, is inapplicable here], the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter **relate to** any employee benefit plan.

Richards v. Union Labor Life Ins. Co., 804 F. Supp. 1101, 1102 (D. Minn. 1992) [emphasis in original], quoting Title 29 U.S.C. §1144(a); see, Parkman v. Prudential Ins. Co. of America, 439 F.3d 767, 771 (8th Cir. 2006).

"The Supreme Court has defined '"relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan."'" Id. at 1103, quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985), quoting in turn, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983); see also, Estes v. Federal Express Corp., 417 F.3d 870, 872 (8th Cir. 2005); Howard v. Coventry Health Care, 293 F.3d 442, 446 (8th Cir. 2002)(stating that "claims relate to an

employee benefit plan covered by ERISA if it '[1] has a connection with or [2] reference to such a plan'"), quoting <u>California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.</u>, 519 U.S. 316, 324 (1997). "However, '[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner' to be preempted." <u>Id.</u> at 1102 (holding that ERISA did not preempt the plaintiff's professional malpractice claims), quoting <u>Shaw v. Delta Air Lines, Inc.</u>, supra at 100 n. 21.

Here, we find that the Defendants' State law Counterclaims for breach of contract, and abuse of process, are preempted by ERISA. The Defendants' Counterclaims are premised upon the propriety of the Plaintiffs' conduct in requesting an audit, and the subsequent commencement of this action. The Plaintiffs, who are all Trustees for the employee benefit plans, seek an audit of the Defendants' business records, in order to corroborate that the Funds have received all of the fringe benefit contributions to which they are entitled, as third party beneficiaries, according to the terms of the CBAs. Further -- despite the Defendants' argument to the contrary -- the Plaintiffs' Complaint, as pled, solely concerns whether the employee benefit funds have received the entirety of the contributions, to which they are due. We find that the Defendants' Counterclaims, by their very nature, are premised upon the existence of

- 9 -

the plans, and are directly connected to the conduct of the administration of those benefit plans, as well as the methods employed by the plans in seeking to enforce employer contributions, and accordingly, that the Defendants' claims "relate to" an employment benefit plan, such that the broad ERISA preemption doctrine applies.

Moreover, we note that Courts have generally found that breach of contract claims, which relate to the administration of employee benefit plans, are preempted by ERISA.  See, e.g., Metropolitan Life Ins. Co. v. General Motors Corp., 481 U.S. 58, 63-64 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 43 (1987); Howard v. Coventry Heath Care, supra at 446; see also, Consolidated Beef Industries, Inc. v. New York Life Ins. Co., 949 F. 2d 960, 963 (8th Cir. 1991), cert. denied 503 U.S. 985 (1992)(holding that an employer's State law breach of contract claim, which dealt with the administration of an employee benefit plan, was preempted by ERISA).  However, in passing, we recognize that, in many of those cases, the claims at issue concerned the denial of requested benefits that were sought by an employee, or a beneficiary of an employee benefit plan.

In opposition, the Defendants cite a number of cases, where Federal Courts found that Federal common law causes of action protect employers "who would otherwise be without a remedy and 'left to the mercy of plan trustees,'" such that

contributing employers' causes of actions, based on a breach of contract theory, were not subject to preemption.   See, <u>Defendants' Supplemental Memorandum in Opposition to Summary Judgment</u>, at p. 3, citing <u>UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America,</u> 998 F.2d 509, 513 (7th Cir. 1993) and <u>Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts</u>, 954 F.2d 299, 304 (5th Cir. 1992); see also, <u>Young America, Inc. v. Union Cent. Life Ins. Co.</u>, 101 F.3d 546, 548 (8th Cir. 1996)("[W]e agree with the district court that an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan.")[citations omitted].

In addition, the Defendants cite <u>Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1</u>, 2000 WL 1448660 (N.D. Ill., May 11, 2000), for the proposition that it has standing to challenge any alleged overpayments, prior to making a contested payment.   See, <u>Defendants' Supplemental Memorandum of Law</u>, at pp. 4-5.   There, an employer sought a Declaratory Judgment that the contributions, which were requested by several employee benefit funds, were improper, while the funds argued that the Court lacked subject matter jurisdiction over the employer's Complaint, because ERISA did not expressly provide an employer with a cause of action.   See, <u>Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1</u>, supra

at *2.  The Court determined that the employer could assert a Federal cause of action, in the context of a Declaratory Judgment, to contest the required contributions, as the employer had presented "a controversy ripe for adjudication," and that "there is little to be gained by requiring [the employer] to make the contested payments and then sue to recover them."  Id. at *4.

We find the cases, which have been cited by the Defendants, to be inapposite, since they all addressed whether a contributing employer had any cause of action, where it had alleged that it was, or would be, overcharged by the payments demanded by the employee benefit plans.   Here, rather, the Defendants are able to seek the relief they primarily request -- namely, avoiding the audits requested by the Funds, and any payments resulting from any deficiencies uncovered from the audits -- by appearing in, and contesting the Funds' claims.  Moreover, the Defendants are able to advance the substance of the legal theories, which underlie their Counterclaims, as affirmative defenses to the Funds' causes of action.  See, Rocket v. Blohorn, 877 F.2d 637, 643-44 (8th Cir. 1989)(permitting employer's contract based defenses to claims alleged in ERISA suit); see also, Defendants' Answer and Counterclaims, at  pp. 4-6.

Furthermore, in  Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1, supra, as in the other cases cited by the Defendants, the underlying dispute was

- 12 -

not the propriety of an audit, but whether contributions, that were being demanded by the employee benefit funds, were proper **after** the conduct of an audit.  The issue, there, was not exhaustion, but "one of timing -- whether the employer sues before it has paid the contested amounts, or whether it sues to recover amounts already paid," and "[the] timing issue is relevant not to whether [the employer's] claim arises under the federal common law of ERISA, but rather to whether there is a case or controversy" for purposes of Article III standing.  Id. at *4.  Accordingly, we find the cases cited by the Defendants to be inapposite, and further, that their stand-alone State law Counterclaims are preempted by ERISA.

Even if the Defendants' Counterclaims were not preempted, we would still recommend that the Plaintiffs' Motion for Summary Judgment, as to those claims, be granted.  The Defendants concede that the Plaintiffs are not signatories to the CBAs, and stand as third-party beneficiaries to those contracts.  The Defendants argue that "as a general rule, the promisor under a contract may assert against the beneficiary any defense that could be asserted against the promisee if the promisee were suing on the contract."  See, Defendants' Memorandum in Opposition to Summary Judgment, Docket No. 113, at p. 9, citing Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 370 (1984).

However,  the United States Supreme Court, as well as our Court of Appeals, has noted that CBAs are not "typical third-beneficiary contract[s]."  <u>Lewis v. Benedict Coal Corp.</u>, 361 U.S. 459, 448 (1960); see also, <u>Schneider Moving & Storage Co. v. Robbins</u>, supra at 371 n. 11; <u>Robbins v. Prosser's Moving and Storage Co.</u>, 700 F.2d 433, 437 (8th Cir. 1983)("While <u>Lewis</u> is arguably distinguishable from the instant case in that it dealt with a proffered substantive defense to the suit rather than the procedural defense of arbitration, the case is recognized as establishing an exception to the general rule that defenses good against the promisee are good against donee beneficiaries such as the Funds."), aff'd and remanded, <u>Schneider Moving & Storage Co. v. Robbins</u>, supra.  In the absence of any precedent, either cited by the Defendants, or uncovered in our independent research, which holds that the Funds are bound to the terms of the contract as third-party beneficiaries, and in light of the Defendants' concession that "collective bargaining agreements are somewhat of an exception to the general rule that defenses against the promisee are valid against third party beneficiaries such as the pension funds," <u>Defendants' Memorandum of Law</u>, at p. 9, we find the Defendants' breach of contract claim is not applicable to the non-signatory Funds, even if it were not already subject to preemption.

With respect to the Defendants' claim for abuse of process, we recognize that "[t]he essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not." Kellar v. VonHoltum, 568 N.W.2d 186, 192 (Minn. App. 1997), citing Hoppe v. Klapperich, 28 N.W.2d 780, 786 (Minn. 1947); see also, Bigelow v. Galway, 281 N.W.2d 835, 837 (Minn. 1978); Pow-Bel Construction Corp. v. Gondek, 192 N.W.2d 812, 814 (Minn. 1971); City of Minnetonka v. Delmore, 1990 WL 119342 at *2 (Minn. App., August 21, 1990) ("The two central elements for an action for abuse of process are (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not."), citing Duerscherl v. Foley, 681 F. Supp. 1364, 1369 (D. Minn. 1987)); Anderson v. City of Hopkins, 1988 WL 8301 at *1 (Minn.App., February 9, 1988).  "The gist of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish." New Creative Enterprises, Inc. v. Dick Hume & Associates, Inc., 1993 WL 4127 at *2 (Minn. App., January 12, 1993), rev. denied (Minn., January

16, 1993), citing <u>Kittler & Hedelson v. Sheehan Properties, Inc.</u>, 203 N.W.2d 835, 840 (Minn. 1973); see also, <u>City of Minnetonka v. Delmore</u>, supra at *2.

The Defendants argue that this lawsuit, and Funds' request for an audit, are merely a vehicle for the unions to address the Defendants' use of non-union subcontractors, after the expiration of the applicable grievance time period. Specifically, they argue that the United States Supreme Court has noted that, "[i]n light of ERISA's standards, * * * [an] audit request would be illegitimate * * * if it were actually an effort by plan trustees to expand plan coverage beyond the class defined in the plans' terms or to acquire information about the employers to advance union goals." <u>Defendants' Memorandum in Opposition</u>, at p. 14, quoting <u>Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.</u>, 472 U.S. 559, 571 n. 12 (1985); see also, <u>Plumber, Steamfitter and Shipfitter Industry Pension Plan & Trust v. Siemens Building Technologies Inc.</u>, 228 F.3d 964, 968 (9th Cir. 2000).

However, the only **evidence** that the Defendants have offered, as to the allegedly improper purposes of the Funds in requesting the audit, which is sought in their Complaint, are contained in Koralia's Affidavits, which state his belief that the Plaintiffs' request for "[a]ll documents evidencing payment to or the transfer of

- 16 -

consideration and/or property of any kind from Defendant NPD, Inc. to Alfredo Rodriguez from January 1, 2004 through the present date," has been made to challenge the classification of NPD's subcontractors.  See, <u>Affidavit of John Koralia,</u> Docket No. 28, ¶¶4-7; Exh. 1.   In particular, Koralia avers that "[unnamed] union representatives have admitted that the plaintiffs sued NPD because the unions want to stop NPD from using non-union subcontractors," see, <u>Second Affidavit of John Koralia</u>, <u>Docket No. 114</u>, at ¶6, but he provides no further testimony, or evidence, which corroborates his vague, conclusory averment, that constitutes no more than rank hearsay.

Furthermore, the only injury that the Defendants assert as arising from the use of this process, is the withholding of funds by **the unions**, who are not parties to this lawsuit.[2]  Accordingly, given the broad powers of trustee funds to conduct audits to enforce ERISA, and the lack of any evidence, other than Koralia's vague averments, as to his suspicions that this action was commenced for nefarious reasons, we would recommend -- if the claims were not already preempted by ERISA -- that the

------

[2]As an aside, we find it to be not entirely surprising that the unions, who are asserted to believe that the Defendants are employing non-union labor, would be withholding target funds, which are offered to employers as an incentive to employ union members.

- 17 -

Defendants' Motion for Summary Judgment be granted, as to the abuse of process claim as well.[3]

In sum, given that ERISA supercedes "any and all State laws insofar as they * * * relate to any employee benefit plan." Parkman v. Prudential Ins. Co. of America, supra at 771, quoting Title 29 U.S.C. §1144(a), as well as the close nexus between the Defendant's State law Counterclaims, and the administration and collection of the contributions to an employee benefit plan, we recommend that the Motion of the Plaintiffs for Summary Judgment on the Defendants' stand-alone Counterclaims be granted.[4]

NOW, THEREFORE, It is --

---

[3]Furthermore, should the Defendants contend that the Plaintiffs' Complaint was truly brought for an improper purpose, they may seek relief, under Rule 11, Federal Rules of Civil Procedure.

[4]Of course, we make no finding, nor recommendation, as to the merits of the Defendants' affirmative defenses, which may relate to, or encompass, the Defendants' Counterclaims for breach of contract, or for abuse of process.

RECOMMENDED:

That the Plaintiffs' Motion for Summary Judgment on the Defendants'
Counterclaims [Docket No. 109] be granted.

Dated:  May 29, 2007                     s/Raymond L. Erickson

                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than June

15,  2007,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than June 15, 2007,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.